Nash, J.
 

 The principles, which govern a court of chan, eery, in granting
 
 ne exeats
 
 or sequestrations, in cases of re, maindermen seeking redress'in cases of this kind, are fully laid down and established in the case of
 
 Sutton & al.
 
 v.
 
 Craddock,
 
 1 Dev. Eq. 134. Formerly, the court of chancery considered the remainderman as entitled, as "a matter of right, to security from the tenant for life for the forth-coming of the property. But it was found, that great oppression and injustice were very often operated. Such security is not now granted, simply
 
 quia timet,
 
 but only when a case of danger is
 
 shewn
 
 to exist. Wms. on Ex’rs. 859.
 
 Toley
 
 v.
 
 Burnall,
 
 1 Bro. C. C. 279. The bill must shew, not only that the complainant fears the property is in danger, from some act or contemplated act of the tenant for life; but it must set forth the grounds, upon which the apprehension rests, that the court may see that the applicant has good cause for claiming its aid.
 

 In all cases of a devise of personal chattels to one for life, with remainder over, the tenant for life will be entitled to the possession of the chattels, upon giving an inventory of them, admitting their reception, and that he is entitled to them only for life, after which they belong to the person in remainder. And an executor may exact such an inventory : indeed, it is his duty to take it before he assents to the bequest for life.—
 
 Slaning
 
 v.
 
 Styles,
 
 3 P. Williams, 336.
 
 Luke
 
 v.
 
 Burnett,
 
 1 Atk. 471. In this case the executors assented to the legacies generally, as they set forth in the bill; without requiring any
 
 *526
 
 inventory from Mary Howell, the tenant for life, nor'do they aSk ^01' P^a*nt'^s charge hi their bill no specific acts of the defendants, upon \yhich they ground their fears of sapety. 0f t]ie property, bnt such only as the tenant for life, and those actually in possession, had by law a right to do.— They do charge, it is true, that they fear the property will be removed beyond the jurisdiction of the court, but they produce no proof of acts done or declarations made by the defendants, to sustain their allegation, and it is met by a full denial from all the-parties defendant. Mrs. Elizabeth Spurling and her children, are made parties complainant to the bill, upon two grounds; the
 
 first,
 
 that Jesse Spurling, the husband of Elizabeth, could not, during the continuance of the particular estate, dispose of the negro Jude and her children, so as to defeat his wife’s estate; and,
 
 secondly,
 
 that Mrs. Spurling herself had but a life estate in Jude, the remainder being in her children. And if either proposition be true, then the plaintiffs have a right to the aid of this court in securing the property, for it is very evident from the answer of Joshua Beam, that his purchase from Jesse Spurling was of the negroes themselves, and not simply a remainder. There can be no doubt, that the devise of the negro Jude, after the life estate to Mary Howell, is in this State good, as an executory devise, and, upon the assent of the executor, vests the estate for life in the first taker, with a legal remainder over. It is/therefore, a vested remainder in the remainderman, and subject to all the liabilities of such an estate. This doctrine has been too long established in this State, and is sustained by too many decisions of this court, to be now disturbed or questioned.—
 
 Dunwooddie
 
 v.
 
 Carrington, 2
 
 Car. L. Rep. 469.
 
 Ingram
 
 v.
 
 Terry, 2
 
 Hawks, 122.
 
 Alston
 
 v.
 
 Foster,
 
 1 Dev. Eq. 337.
 
 Jones
 
 v.
 
 Zollicofier,
 
 N. C. Term Rep. 213. -These cases establish the principle, that an assent by an executor to a life estate is an assent to the estate-in remainder and that the latter is a vested legal estate. The estate of Elizabeth Spurling, therefore, in the negro Jude was not an equity, nor a mere
 
 *527
 
 possibility, but a vested remainder in a chattel, not consumed in the use and therefore capable of being assigned. v.
 
 Roberts,
 
 4 Dev. 81. Could Jesse Spurling assign the negrojude, so as to defeat the claim of his wife, Elizab
 
 eth
 
 Mary Howell, the tenant for life, is still in being and Elizabeth Spurling has survived her husband. That a husband may assign every chattel interest of the wife, whether immediate or expectant, which from its nature is assigna. ble, as if the interest was the husband’s in his own right, is established in England by the highest authorities. 3 Thomas’ Coke, 333,
 
 note
 
 m—1 Roper on property 236. The only exception to the rule is, where the property is so limited to the wife, that it cannot possibly come into possession during the coverture. In the case of
 
 Burnett
 
 v.
 
 Roberts,
 
 the husband had sold the property absolutely, before the life estate expired, and they both lived until after that event took place. In the present case, the husband died before the tenant for life, leaving his wifestill living. Is the case thereby altered as to the operation of the principle'? We think not. The Chief Justice, in delivering the opinion,of the court in the case last referred' to, intimates, very strongly, that it would not; but the point, not arising, was not decided. The question was fully presented in the subsequent case of
 
 Knight & al
 
 v. Leake, 2 Dev. & Bat. 133. William Hicks, by his will, bequeated to his daughter Frances, for life, a negro girl named Grace, with remainder to her children. Frances, the legatee for life, was married to Moses Knight, who took pos-, session of Grace and her child Bob, the subject of the controversy, with the assent of the executors. A judgment was obtained against Knight and Caleb Curtis and Daniel McIntosh ; and the
 
 fi.fa.
 
 issuing on that judgment was levied on Bob. Mrs. McKnight, the tenant for life, was then alive, as well as her four children, who were entitled to the remainder' in Bob. Two of these children, the wives of Daniel McIntosh and Caleb Curtis, were plaintiffs in the action. At the
 
 *528
 
 Sheriff’s sale under the execution, the defendant purchased ’ an^ the action was in detinue to recover him. It was contended on behalf of the plaintiffs, that the husbands, Mcj Intosh and Curtis, had not such an interest, as was liable to be sold under a
 
 ji. fa.
 
 The court decided the rule of law to be, that “all vested legal interests of the debtor, which he himself can legally sell, in things, which are themseltes liable to be sold under a
 
 fi.
 
 fa., may be so sold.” In this proposition, in relation to the case before them, they assume, that the husband had such an interest as he c.ould sell. In a subsequent passage they leave nothing to inference, but declare, that a husband,
 
 jure mariii,
 
 has such an interest over the vested legal interest of his wife in a chattel, real or personal, of which a particular estate is outstanding, that he can sell such interest so as to transfer it completely to the purchaser. Such, the court says, is not the effect of an assignment
 
 by
 
 a
 
 husband
 
 of his wife’s
 
 equitable
 
 interest in a chattel, in which she has not the right of immediate enjoyment. It is perfectly well settled, that a vested remainder in a slave, dependent upon the estate for life in another, is a vested
 
 legal
 
 interest. We hold', then, that Jesse Spurling had such an interest m the woman Jude and her children, as enabled him to sell and convey them; and that his vendee, Beam, acquired by his purchase, the transaction being freed from other objections, a completé title; and that Mrs. Spurling has no interest in them and consequently no claim to to the aid of this court. We are1’ not unapprized, that in some reepnt cases in the English Courts of Chancery, this doctrinéis denied as a principle of Equity. Such, however, we consideras the settled law' of North Carolina. It is much more important to the community at large, that the laws, governing the transmission of property, should be permanent and fixed, than how they are fixed. A contrary decision would unsettle the law, upon a very important subject, with which the profession is now familiar. We do hot mean to say, that, when satisfied a previous decision is
 
 *529
 
 wrong in principle, we are under any obligation still to proceed in error. But. when a train of decisions in our own' courts of Supreme jurisdiction, has established certain principles as law, we do not feel called on to repudiate them, because another tribunal, however high, has decided otherwise,We see no good reason in this case for disturbing a settled: principle.
 

 Have the children of Mrs. Spurling' any interest in Jude and her children? We think they have not. Their clainf rests upon the following clause in the will of their grandfather, John Howell: “ And what shall come to my daughters,Elizabeth and Polly, ,1 give and beqüeath them during their' natural lives, and after their death to their children.” If this clause is to be considered as governing the bequest of Jude, fhen the' children have an interest, which it is the duty óf the court tó pfotect. But it has no connection with that bequest. The bequest of Jude is á specific legacy, standing, as fat aS the children are concerned, by itself; but accompanied by Specific bequests to all the other children of the testator. After making these specific bequests, the testator proceeds to dispose1 Of the residue of hiS estate, upon the death of his Wife : “And, aftef my wife’s death, the plantation, whereotl I now live, to' be equally divided between my four children,” (naming them)' “and the rest of my estate to be equally divided between my children,” (naming them, of whom Elizabeth Was one;)' Then' follows the clause in question. Its location and phraseology evidently confine its operation to the share of Elizabeth in the'
 
 tesidimm,
 
 and has no bearing or effect off the bequest of Jude. The words “ share” and “ comes,” could relate only to the' share or portion of the
 
 residuuin,
 
 to which Elizabeth might be entitled-. Of what this
 
 residuuin
 
 consisted; we are not informed ; whether of land, other than the home plantation, of of negroes or othei' personal property. Iri this share of the
 
 fesiduum,
 
 in whatever it may consist, Elizabeth has büt ai fifis estate, with remainder to her children. The time for its enjoyment, either t'o the mother or the children,- has not yet ár
 
 *530
 
 rived, as Mary Howell is still alive: And there is no prayéí *n bill; ^ latter should furnish an inventory of the property, that came to her hands, or is now in her possession. ^er gajning possession of the negro Jude by the three children, by contract with Mary Howell, the executor having assented to the legacy to her, Jesse Spurling had the right in law, if he did so, to sell the negroes to Joshua Beam, and the latter would acquire by such purchase a perfect right to them. If he did not purchase the absolute title,- but only the life estate of Mary Howell, the plaintiffs have no right to complain, inasmuch as he swears, he had no intention whatever to remove the negroes beyond the- jurisdiction of the court, and the plaintiffs have entirely failed to sustain their allegations by proofs.
 

 Polly Howell intermarried with Daniel King; both are alive and plaintiffs in the bill. To Polly, the testator left a negro woman, Hannah* and she is included with Elizabeth Spurling in the before recited clause, as to her
 
 share
 
 of the surplus. — - We are not informed what has become of Hannah, but sup. pose she is still in the possession of Mary Howell. She', and Tuclfer, her agent, both swear, they have no intention, and never had, of removing the negroes, and there is no proof in contradiction.
 

 The negro Minty is given by the will to the testator’s granddaughter, Betsy Howell, who intermarried with Crayton Led-ford.- The answer of Mary Howell states, that she had put the negro Minty and her children into the possession of Led-ford, he paying her five dollars a year; and, as we understand it, she surrendered up tq him h'er life estate in those negroes. This she had a perfect right to do, and Ledford’s title to them is complete, and he has a legal power to dispose of them as he pleases.
 

 As to the two executors, John and Joshua Howell, they have no right to complain. They have not shevm by proofs that their property is in any danger, and the answers deny it.
 

 The bill further charges, that the defendant, Mary Howell,
 
 *531
 
 put tenants on the land, who have committed waste. The waste is denied by the answer, and not supported by any testimony.
 

 Upon the whole we are of opinion, that the complaint of the plaintiffs is unfounded, that the sequestration improperly issued and must be withdrawn, and the bill dismissed with costs, to be taxed against the plaintiffs, except the infants. In taxing the costs, the master will allow one Solicitor’s fee tothe defendant Beam, and one for all the other defendants.
 

 Per Curiam, Uecree accordingly.